CHARLES J. PECKHAM *et al.* v. T. H. GROUP *et al.*
No. 41.

FORECLOSURE.—*Extent of Jurisdiction—Equity Powers.* In the foreclosure of mortgages and the determination of the priorities of liens on the mortgaged premises and decreeing the sale of the mortgaged property the court exercises an equitable jurisdiction, and having all the parties in interest before it, and jurisdiction over the subject-matter, it has power to make such order and decree respecting the sale of the mortgaged property as justice and equity may require, and may order the property to be sold in separate parcels, or all as one tract, as the interest of all parties may require. The court retains jurisdiction and control over the property until its decrees have been fully carried into effect, and may confirm or set aside any sale of real or personal property made under its decree where the same has not been made in conformity to such decree, and may confirm a sale in whole or in part, or set aside a part. The court does not lose jurisdiction over the property until the final settlement of the judgment, costs, and taxes.

24—KAN. APP.

MEMORANDUM.— Error from Cowley district court; M. G. TROUP, judge. Action by The Domestic Sewing Machine Company against T. H. Group and others to foreclose a mortgage. The motion of Group and wife to set aside the sheriff's sale of certain growing wheat was granted. The purchasers at said sale excepted to the order, and bring the case to this court. Affirmed. The opinion herein, filed December 7, 1895, states the material facts.

*Madden & Buckman,* for plaintiffs in error.

*Torrance & Torrance,* and *Pollock & Love,* for defendants in error.

The opinion of the court was delivered by

JOHNSON, P. J.: The plaintiffs in error were the purchasers of 130 acres of growing wheat at a sheriff's sale, under a decree and order of sale in the foreclosure of certain mortgages. The court in the decree of foreclosure ordered the lands to be appraised subject to certain outstanding mortgage liens, which were paramount to the mortgages in foreclosure, and to be appraised separately from the growing crop of wheat thereon, and the wheat to be appraised separately from the lands, and if the lands could be sold for sufficient to pay judgments, taxes, and costs, that the growing wheat be reserved from the sale for the use and benefit of the mortgagors. The sheriff, under the order of sale, had the lands appraised in accordance with the decree of the court and order of sale, and also had the growing wheat appraised separately. The lands were offered for sale separately, and sold for two-thirds of the appraised value, and for about $90 less than sufficient to satisfy the judgments, taxes,

and costs.  The sheriff thereupon offered the growing
wheat for sale separately, and when the wheat was
being offered for sale the parties who had purchased
the lands were bidding upon the wheat, when the
mortgagors, by their attorneys, offered to pay and sat-
isfy any balances that were remaining on the judg-
ments, taxes, and costs, after the application of the
purchase price of the lands.  They demanded the
sheriff to stop the sale and receive the money, and
offered to pay the money to him ; but the sheriff re-
fused to accept the money and stop the sale of the
wheat, and the same was thereupon bid in by the
same parties who bid in the land, but for a less sum
than two-thirds of the appraised value of the wheat,
and the amount bid for the land and wheat together
was less than two-thirds of the appraised value of the
land and wheat.  The sheriff made return of the
order of sale, showing his doings thereunder, and on
motion of the purchasers the separate sale of the land
was confirmed, and on motion of the mortgagors it
was ordered that the sale of the wheat be set aside
and vacated, upon their depositing the amount in
court to satisfy the judgments, taxes, and costs ; and
thereupon, in accordance with the order of the court,
the mortgagors deposited the amount in court suffi-
cient to satisfy the remainder of the judgments, taxes,
and costs, and the sale was set aside, and the pur-
chasers of the wheat duly excepted and bring the case
to this court for review.

It is insisted by the plaintiffs in error that the dis-
trict court had no power or jurisdiction to set aside
the sale of the growing wheat ; that by the separate
sale of the wheat it must be treated as a sale of per-
sonal property which cannot be either confirmed or
set aside ; that it was an attempt by the defendants in

error, by a motion to set aside the sale, to try an action for the conversion of personal property; that the court had no power to try the question attempted to be raised in the motion to set aside said sale in the summary manner in which it did. We cannot concur in this view of the case. The proceedings to foreclose the mortgage and determine the priorities of the several lien-holders were equitable proceedings, and the court, having all the parties in interest before it and jurisdiction over the subject-matter and the parties, had the power to determine the rights of all parties before it and to make such order respecting the sale of the mortgaged property as equity and justice demanded. The court had power to order the manner in which the mortgaged property should be sold. It could order that it be sold in separate parcels, or that it be sold all together, as seemed most advantageous to all parties in interest. It was the duty of the court, exercising equitable jurisdiction, to order the sale of the mortgaged premises so as to provide for the payment of the debts secured by the several mortgages, and at the same time to protect the interest of the mortgagors and save for them as much as possible out of the sale of their property; and the court, after a full consideration of the matter, determined that it would be equitable, if the land would sell for sufficient to satisfy the liens, taxes, and costs, to save the growing wheat on the mortgaged premises to Group and his family, and in the decree of foreclosure ordered that the land and wheat be separately appraised, and, if the land should sell for sufficient to pay the judgments, taxes, and costs, the growing wheat should be reserved to the mortgagors and their family, which was certainly proper and equitable. The purchasers, Peckham & Peckham, had no interest in the proceed

ings, either as mortgagees or lien-holders, by judgment or otherwise. They purchased the land with full knowledge of the order and decree of the court that the wheat was to be allowed to mature on the premises and the right of the owner of the wheat to harvest it at harvest time, and for this reason the lands were appraised at a less sum than it would otherwise have been.

On the foreclosure and sale of mortgaged premises and in the distribution of the surplus money there are often important questions as to the primary fund for the payment of the mortgage debt and as to the order in which the lands charged with the various liens shall be sold and the avails distributed. Courts of equity settle these questions upon broad and comprehensive principles, and direct the order in which the mortgaged property shall be sold and the distribution of the surplus after the report of the sale has been confirmed. It is a settled principle in equity that, where a court has properly acquired jurisdiction of a cause for one purpose, it will retain it in order to do full and complete justice between all parties, and especially where there are incidental matters to be determined in order to give effect to its decrees, so that litigation may be terminated as well as the remedy facilitated, and more particularly so if the available remedy in equity as to the cause already in court is more full than could be afforded by a court of law.

The growing wheat was as much subject to the mortgage lien as the land itself, and the court, having the property in its jurisdiction, had the power to order that the sale made by the sheriff should be set aside, and thereby save something out of the property for the defendants. Their rights were just as sacred as those of the mortgagees. The judgments, taxes and

costs were all satisfied, and the mortgagees had no complaint to make; but the purchasers come into court and seek to take advantage of the embarrassed condition of the mortgagors, and thereby appropriate the fruits of their labor to their benefit, and speculate out of the misfortunes of the former owners of this property! This a court of equity should not permit.

There being no error in the order of the court setting aside and vacating the sale of the growing wheat, the judgment of the district court is affirmed.

All the Judges concurring.