No. 26,170.

ED POOL, *Appellant*, v. R. C. GATES et al., *Appellee*.

SYLLABUS BY THE COURT.

MORTGAGES—*Foreclosure by Action—Right to Surplus Proceeds.* In the confirmation of a judicial sale in foreclosure of a mortgage on real property, the surplus proceeds of the sale, after paying taxes upon the real property, the costs of the foreclosure proceeding and the judgment in the foreclosure decree, should be paid to the defendant in execution.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed November 7, 1925. Reversed.

*Paul R. Nagle, Robert Garvin* and *Evart Garvin,* all of St. John, for the appellant.

*C. M. Williams* and *D. C. Martindell,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: The question presented by this appeal is the correctness of the judgment of the trial court upon the confirmation of a judicial sale in directing the application of surplus proceeds to the payment of debts not previously adjudicated.

The question arose in this way: In an action previously in this court (116 Kan. 195, 225 Pac. 1069) R. C. Gates obtained a personal judgment against Ed Pool upon a note for $15,000 and interest on one cause of action, and upon another note for $6,000 with interest on another cause of action, and for costs, and for the foreclosure of two mortgages given to secure the payment of such notes. The mortgages foreclosed were later in date and time of record to first mortgages upon the same land, aggregating $49,000, and second mortgages, given as commissions in procuring the first mortgages. One of the mortgages foreclosed recited that it was given "subject to all mortgages of record," and both of the mortgages foreclosed were in fact junior and inferior to the first mortgages and commission mortgages above mentioned. The holders of the first mortgages and commission mortgages were not made parties to the foreclosure proceedings, and they were not mentioned in the decree, hence the sheriff's sale hereinafter mentioned was necessarily subject to those mortgages. (*Marsh v. Votaw,* 102 Kan. 747, 172 Pac.

Mortgages, 27 Cyc. p. 1767; 19 R. C. L. 661, 662.

30.)   The case in which the foreclosure decree was obtained was filed originally in Stafford county, being the county in which the lands were situated, but for good cause shown the case was transferred to Reno county upon a change of venue, and the decree of foreclosure was entered in that court.  After the affirmance of that decree by this court (116 Kan. 195, 225 Pac. 1069), an order of sale was issued reciting the judgments in favor of Gates and against Pool, together with the decree of foreclosure, directed to the sheriff and commanding him to advertise and sell the real property described therein, and from the proceeds of the sale to pay, first, taxes; second, the cost and expense of the suit and sale; third, the judgments and interest; and the residue, if any, to be returned into court.  Pursuant to such order of sale the sheriff of Stafford county advertised the property and sold the same, as directed in the order of sale, to R. C. Gates for $37,050.  The amount of the judgments in favor of Gates, with interest computed to July 21, 1924, the day of sale, amounted to $24,651.56.  The sheriff demanded of the purchaser the difference between the amount of his bid and the amount of his judgment, but payment of such amount was refused, the purchaser claiming the right to have credited upon his bid sums he had paid to take up overdue interest coupons upon the first mortgage notes, and to take up the commission mortgages, and for taxes.  The purchaser presented to the sheriff a proposed form of return for him to make upon the order of sale, which return set forth his claims, which the sheriff refused to execute, but attached the same to the order of sale, and on July 24, 1924, made a return showing the facts as above stated.  R. C. Gates then filed a motion to require the sheriff of Stafford county to correct his return so as to show the exact amount bid by defendant for the several tracts of land sold at the sale, and that he be allowed credit upon his bid for the amount due him upon his mortgages, and also for the amount which he had paid as interest upon the first mortgages and commission mortgages since obtaining his judgment in this case, and also for the amount of taxes which he had paid upon the land, and that the sheriff receive of the purchaser cash and make his return showing his receipt of cash for his costs and expenses of foreclosure and sale under his mortgages and for the taxes.  This motion was allowed July 26, 1924, without notice to the other parties.  Ed Pool then filed a motion to set aside the order allowing the motion last mentioned for the reason of lack of notice and also for the reason that the court

had no jurisdiction of the subject matter nor of the sheriff of Stafford county, and also filed a motion to confirm the sale as first returned by the sheriff. Upon the hearing of these motions, August 7, 1924, both parties being present by counsel, the court suggested that counsel might agree on a form of return for the sheriff to make, and such an agreement was made. In conformity to this agreement the sheriff filed an amended return, reporting the sale of the real property, as directed by the order of sale, to R. C. Gates for $37,050, and—

"The said R. C. Gates claims certain credits against the purchase price for taxes and for interest and commission mortgages which he claims was a prior lien to his and which he claims he had to pay in order to protect his liens and about which I have no knowledge. I therefore did not give him credit, and I refer the matter of the credits to the court."

and that he had received of R. C. Gates the sum of $1,282.65, the amount of the taxes of the land for the year 1923, and the costs of the action, and sale, which he had paid.

Whereupon the court set aside his order of July 26, 1924, and Pool withdrew his motion to confirm the sale and to confirm the return of the sheriff made July 24. Gates then filed a motion for credits upon bid and for confirmation of sale. The motion recited in detail the sums paid by Gates for past due interest on the first mortgages, for the amounts of the commission mortgages, upon which foreclosure suits had been started because of unpaid installments, and taxes for the year 1922, which he had paid to the first mortgagees, such taxes having been paid by them to prevent tax sales, and averred that he had been compelled to make these payments, after the decree of foreclosure and before the sale, in order to prevent foreclosure of the first mortgages and the commission mortgages to the impairment of his lien, and moved that he be allowed to credit the sums so paid by him upon his bid, and after allowing such credits to confirm the sale. Pool objected to the allowance of such credits. The court heard evidence upon this motion and made full findings of fact; in substance, that there were first mortgages upon the land aggregating $49,000, and also commission mortgages; that interest and installment payments thereon were past due, that the lands had gone to tax sale, and the mortgagees had redeemed the lands from the sale of the taxes of 1922; that suits had been brought in Stafford county to foreclose the commission mortgages; that the holders of the first mortgages were

threatening suit upon them unless all interest due on first mortgages, and all commission mortgages, and all taxes which they had paid, should be paid to date; that R. C. Gates, after he had obtained the decree of foreclosure in this case, and for the purpose of protecting his lien upon the premises, had paid the several amounts, aggregating, with interest computed to the day of sale, the sum of $11,096.16, and further found that R. C. Gates had bid for the property as a whole the sum of $37,050 at the sheriff's sale; that he was entitled to credit upon such bid for his judgment under his decree of foreclosure, with interest computed to the day of sale amounting to $24,651.56, for sum of $1,282.65 paid the sheriff and applied upon taxes and costs, and for the $11,096.16 which he had paid upon the prior mortgages and taxes of 1922; that the sheriff's sale was in all respects regular, and rendered judgment in accordance with such findings and confirmed the sale. Ed Pool objected to these findings and to the allowance of the claim of R. C. Gates for the sums paid by him upon the prior mortgages, and moved the court to require R. C. Gates to pay into court the sum of $11,116.79, being the amount of his bid, less the amount of his judgment with interest, and the sum he had paid for taxes and costs, and to confirm the sale, which motion was denied, and Ed Pool has appealed.

The question for decision in this case is really governed by our statute. An order of sale in a foreclosure suit is a special execution, as that term is used in R. S. 60-3402. (*Webber v. Harshbarger, Sheriff*, 5 Kan. App. 185, 189; *Norton v. Reardon*, 67 Kan. 302, 304, 72 Pac. 861.) Another section reads:

"If on any sale made as aforesaid (*i. e.*, under any execution as classified in R. S. 60-3402) there shall be in the hands of the sheriff or other officer more money than is sufficient to satisfy the writ or writs of execution, with interest and costs, the sheriff or other officer shall on demand pay the balance to the defendant in execution or his legal representatives." (R. S. 60-3423.)

"The proceeds are first applied to the liens, judgments and costs, and the surplus goes to the judgment debtor." (*Blandin's Adm'r v. Wade,* 20 Kan. 251, 255.)

And it is provided by R. S. 79-419 that where any real estate shall be sold at judicial sale the court shall order all taxes and penalties thereon against such lands to be discharged out of the proceeds of such sale. This includes all taxes which have not ripened into a tax deed. (*Kerr v. Hoskinson*, 5 Kan. App. 193; *Cade v. Jeffers,* 6 Kan. App. 61; *Galbreath v. Drought,* 29 Kan. 711; *Capital Bank v. Huntoon,* 35 Kan. 577, 599, 11 Pac. 369.)

Pool v. Gates.

The decree of foreclosure in this case conformed to the statute by providing for paying the taxes, and the order of sale provided that from the proceeds of the sale there be paid first, the taxes; second, the costs; third, the sum found by the decree to be due to R. C. Gates; and under R. S. 60-3423, above quoted, the balance of the proceeds of the sale of the land should have been paid "to the defendant in execution," who, in this case, is Ed Pool.

Another section of the statute provides:

"In actions to enforce a mortgage, . . . no real estate shall be sold for the payment of any money . . . except in pursuance of a judgment of a court of competent jurisdiction ordering such sale." (R. S. 60-3107.)

There has been no judgment decreeing the sale of this property for unpaid interest coupons upon the first mortgages nor for the unpaid commission mortgages. To allow them to be paid out of the proceeds of the sale in this case would be a specific violation of the statute last quoted.

Under our old code (Gen. Stat. 1868, ch. 80, § 458) it was the duty of the court to confirm a sale when the proceedings were found to be regular (*Adams v. Devalley*, 40 Kan. 486, 20 Pac. 239), but under our present code, R. S. 60-3463, the court is required to confirm the sale if it finds the proceedings regular and in conformity with law and equity. Hence equitable matters, as distinct from legal questions as to the regularity of the sale, may be considered by the court in passing upon a motion to confirm a sale. (*Bank v. Murray*, 84 Kan. 524, 114 Pac. 847; *Robinson v. Kennedy*, 93 Kan. 514, 516, 144 Pac. 1002; *Norris v. Evans*, 102 Kan. 583, 590, 171 Pac. 606; *Insurance Co. v. Stegink*, 106 Kan. 730, 189 Pac. 965.)

Appellee argues that since under the present code the court sits as a chancellor in confirming a judicial sale, with power to consider equitable as well as legal matters, he may also sit as a chancellor and direct the surplus proceeds of a sale to be paid to any one equitably entitled to it. The conclusion goes too far—the amendment did not change R. S. 60-3423, providing the surplus shall be paid to the defendant in execution, neither did it change R. S. 60-3107, providing that in mortgage foreclosures no real estate shall be sold except in pursuance of a judgment. The Kansas cases, *Brier v. Brinkman*, 44 Kan. 570, 24 Pac. 1108, and *Peckham v. Group*, 3 Kan. App. 369, cited by appellee, do not go so far as to support his contention, neither do the cases cited from other jurisdictions. In

*Silver Lake Bank v. North,* 4 John. Ch. (N. Y.) 370; *Dodge v. Silverthorn,* 12 Wis. 644; *Mumford v. McIntyre,* 16 Ill. App. 316; *Hughes v. Johnson, Trustee,* 38 Ark. 285; *Crane v. Forth,* 95 Cal. 88; *Fitch v. Stallings,* 5 Colo. App. 106; *Balen v. Mercier,* 75 Mich. 42; *Windt v. Covert,* 152 Cal. 350, the payments by the junior mortgagee upon prior liens were alleged in the pleading and adjudicated in the decree foreclosing the junior mortgage. The text in 27 Cyc. 1767, based upon the cases last cited, should be construed in accordance with the opinions in those cases.

Since the statute requires the payment of the taxes on the land, and this means all taxes past due, whether held by the county or by some one else, out of the proceeds of the sale, R. C. Gates should be credited upon his bid for the taxes of 1922 paid by him. The remainder of his bid of $37,050, less the amount of his judgments, $24,651.56, and less the amount he has already paid to the sheriff, $1,282.65, should be ordered paid into court and the amount paid to Ed Pool.

The judgment of the court below is reversed, with directions to enter judgment in accordance with this opinion.

BURCH, J. (dissenting): I concur in the syllabus, but not in judgment of reversal.