No. 26,839.

THE SOLOMON NATIONAL BANK, *Appellant,* v. LESTER BIRCH et al., *Appellees.*

### SYLLABUS BY THE COURT.

HOMESTEADS—*Rights of Adult Children—Judicial Sale.* Upon the death of an intestate who with his family had been in possession of a tract of land as his homestead, the title to certain shares descended at once to his widow and the children composing his family, and was exempt to the family as against the debts of the intestate and his widow, but the shares of the adult sons were not exempt from sale for their own debts.

Appeal from Mitchell district court; WILLIAM R. MITCHELL, judge. Opinion filed June 12, 1926. Reversed.

*David Ritchie* and *Omer D. Smith,* both of Salina, for the appellant.
*Ira N. Tice* and *William Tice,* both of Beloit, for the appellees.

Homesteads, 29 C. J. p. 1004 n. 11.

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal arose out of rulings of the court denying a motion to confirm a sale of real estate and upon another to set the sale aside. The sale was set aside and the judgment creditor, the Solomon National Bank, appeals.

It appears that the bank obtained a judgment against Lester Birch and Dallas U. Birch on June 23, 1922. Several executions were issued on the judgment, on which returns were made that no property could be found upon which to levy. Finally on May 11, 1925, one was issued which was levied on the undivided interests of Lester Birch and Dallas U. Birch on a tract of land owned by their father when he died in 1909. A sale was made of these interests to the bank for $1,000, subject to a certain mortgage on the land, and the proceedings had on the execution are conceded to have been regular in every respect. When the motion was made to confirm the sale, Lester and Dallas U. Birch, who will be referred to as defendants, moved to set it aside on the ground that the land was the homestead of the defendants, and had been for more than ten years before the judgment was rendered, and had continued to be their homestead until the time the motion was filed. Upon testimony produced the court found that after the death of the owner, William Birch, the land had been occupied by the widow, Clara T. Birch, and the three children of the intestate, as their home and had never been abandoned as their homestead by any of them except Stella, who left the home when she was married. As to Lester it was found that he had always occupied the premises as his home, until he conveyed his interest to his mother, in December, 1923, at which time he rented the land and has continued to reside there. It was further found that Dallas U. Birch conveyed his interest to his mother subject to the mortgage of $3,000 on the entire farm, which had been renewed with the addition to it of the proceeds of a $2,500 mortgage, which was used by the defendants, Lester and Dallas U., and which they agreed to pay out of their interest, but the latter sum has never been paid. Upon the sole ground that the farm was the homestead of the defendants the court set aside the sale.

The testimony touching the homestead feature was that William Birch died intestate in 1909. Prior to his death his wife and three children lived in the home with him, and it appears that all of them reached majority long before the judgment was rendered. At the

time of the trial Dallas U. was forty-two years of age, Stella thirty-three, and Lester thirty. Upon the father's death the title of one-half of the farm descended to the widow and one-sixth of it to each of the children. While it was subject to partition for many years, it had never been divided among the heirs. The widow has lived on the farm since the death of her husband, and although absent from home about three years while working for others, it was shown that she had no intention of relinquishing her homestead. When Stella married she left the farm, and neither she nor her mother has intervened in this litigation as to the sale of the interests of the defendants. There was testimony that Lester had lived all his life on the farm, that he was married in 1915, and has two children, and had occupied a part of the residence ever since his marriage. After the rendition of the judgment and in 1923, he and Dallas executed a conveyance to their mother, and after that time Lester obtained a lease of the farm and has continued to reside there. Dallas U., who was over forty-two years of age at the time of the hearing, is unmarried, and his testimony has not been taken, as he has been in California for two years. There was testimony that before going to California he came home off and on, and had some personal effects in a room of the home, consisting of clothing, pictures and some furniture, and that he always spoke of that place as his home.

It is contended by the bank that the proceedings on the execution being regular, the court was required to confirm the sale. Any person interested in the property sold may move to set the sale aside at any time before confirmation. (*White-Crow v. White-Wing,* 3 Kan. 276.) On a motion to set it aside the court has a reasonable discretion, and if it is made to appear that there are equitable grounds for setting the sale aside, it may be done although the proceedings under the execution are absolutely regular. If the land levied on and sold was exempt and not subject to sale, equitable grounds existed for setting the sale aside. (*Robinson v. Kennedy,* 93 Kan. 514, 144 Pac. 1002; *Insurance Co. v. Stegink,* 106 Kan. 730, 189 Pac. 925; *Pool v. Gates,* 119 Kan. 621, 240 Pac. 580, and cases cited.) The court was warranted in considering equitable as well as legal grounds, and could set aside the sale if it was determined that it was inequitable to confirm it. It would be inequitable to confirm a sale of property not subject to sale, and the court would have been warranted in the action taken if the interests sold were in fact exempt from sale on execution. The question then arises, were the interests in land held

Solomon Nat'l Bank v. Birch.

by the defendants exempt from sale on the ground that the property was their homestead? They inherited and held undivided interests in the farm. A judgment was rendered against them during their ownership of these interests. No question is raised as to the validity of the judgment, and it necessarily became a lien on their interests and they could be sold to satisfy the judgment unless they were exempt. They claim that the farm was the homestead of their father and his family; that they were and have continued to be members of that family, and having resided on the farm their homestead rights·persisted although the farm has been subject to partition for many years, and although one of the defendants has become the head of another family, and the other is a middle-aged man who has left a few of his effects in a room of his father's home. They claim that their shares are not only exempt from sale for debts of the head of the family, but also from their own debts contracted long after his death. The general purpose of a homestead exemption is that upon the death of the owner a certain share of his property shall be exempt from his debts to his surviving spouse and minor children who constituted his family. The central idea of an exemption to the family is that of dependence upon the head of the family, the dependence of persons who are under his roof and control and to whom he furnishes shelter and protection because of some legal or moral obligation to them. Express provisions of statute may of course limit or extend the membership of a family, but the element of dependency enters largely into what is called the family relation, and that relation must exist in order that the exemption may apply. (*Elliot v. Thomas,* 161 Mo. App. 441.) In many of the states it is held that adult children cannot claim the benefits of the homestead. (29 C. J. 1004.) These rulings depend in part on statutes defining exemptions. In our state the homestead benefits have been extended to an adult daughter who was and had remained a member of the family as it existed in the lifetime of the father and mother. (*Koehler v. Gray,* 102 Kan. 878, 172 Pac. 25.) The exemption there awarded to the adult unmarried daughter was from a sale of the home for the debts of her intestate father. The exemption has been applied to the debts of the spouse of the deceased homesteader as well as to his debts. (*Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273.) There is a reason, however, for this extension of benefits because of the oneness of the husband and wife, and that each of them share in the control and management of the children of the family, but the

exemption has never been extended to the property of adult children from sale for the payment of their own debts. It is unreasonable to think that it was within the intention of the lawmakers that the property of a deceased homesteader which descended to adult children should be exempt from sale for the payment of their own debts because they still lived on what was once the homestead of the deceased father. On the theory of defendants they can carry on business until they are four-score years old and claim exemptions against their own debts as members of the family of their father, who died a half century before. Dallas had reached majority several years before his father died and has long been engaged in business for himself. There is no element of dependency on which to found a family relation, but even if he could be considered a member of the family he is not entitled to immunity from the payment of his own debts. When their father died the title to one-sixth of the land instantly vested in each of the defendants. Neither of them was entitled to claim exemption of the shares so acquired from sale for the payment of his own debt. Lester who was married more than ten years ago and has been the head of another family since that time, is seeking shelter under the homestead right of his parents. From some of the evidence it appears that he and his brother have conveyed their interest to their mother since the judgment was rendered, and that she has leased the farm to Lester. He is not claiming a homestead, however, on the leasehold. Nothing appears as to whether he was a mere cropper, holding from year to year, or by mere sufferance. Apparently the court held that he was entitled to exemption because he had been a member of his father's family, and had resided on the farm continuously. The question of a homestead under a leasehold was not submitted to or determined by the court. Besides, the general rule is that a claimant is not entitled to two homesteads at the same time. It is said that the mother is entitled to a homestead right in the entire farm, but she was not a party to the proceeding and the question of her right is not before us. Whether the bank by the sale takes the interest of defendants subject to her right of occupancy cannot be determined on this appeal. It is clear that the defendants were not entitled to an exemption of their interests in the land from sale for their own debts, and it must be held that the court erred in setting aside the sale and in refusing confirmation of it.

The judgment is therefore reversed and the cause remanded for further proceedings.